morning your honors for the record my name is Terrence Kellogg I represent appellant Becky Hunter as the courts aware this is the second time that this case has been in the Ninth Circuit Court of Appeals we're here following the remand for resentencing I don't have a script so any questions or concerns that any of you have I encourage you to interrupt me and ask so how do you I'll take your invitation it's not having a script it's a good idea because we always interrupt anyway but then you don't know what to say when you don't have a script that's true yeah well we will freelance for you on the grouping question how did there seem to be some confusion about the remand as to whether what whether you were grouping all of the offenses as one big ball of wax or whether there was some possibility of subgroups your honor I agree with three points that you made in that question there was an abundance of confusion at the time of resentencing and it wasn't clarified through the resentencing process I what do you think should have been done that's I think that what should have been done and I came to this revelation in hindsight and I apologize to the district court for not more clearly articulating this position at the time of the resentencing I think that what should have been done is that each of the counts of conviction that tracked a different version of the guidelines should have been grouped together and the analysis should have been under the multiple offense policy I'm not suggesting that everything should have been grouped together but certainly that would have been a much better start for the ex post facto problem that was remanded to the court I think you didn't make that argument to the district court you're absolutely right and that's why I say that I have to apologize to the district court for not clearly making that argument and if you would have made that argument would that have made consecutive sentences possible on the various groups in other words you would have had more than one group then right yes but under then you could have sentenced consecutively for each one of the separate groups but under the multiple offense policy under the unit analysis the groups would not have been adding that much to count 20 which was pretty much driving the whole show of the 22 counts that were but and I'm I'm I apologize I may not have missed I may not have understood your answer it might not have added that much but it still could have resulted in consecutive sentences couldn't it there were separate groups I believe that it could have depending upon the nature of the convictions but of the 22 counts that were before judge by slang for sentencing only seven of them were more than five years statutory maximum terms that was the concern that I was attempting to articulate at the time of the resentencing that what was being done to miss hunter to her disadvantage was to take several different enhancements I believe eight levels of enhancement all together from things such as the bankruptcy or other more innocuous offenses and bootstrap a much more serious guideline range under count 20 even though we were under the correct mm near the guidelines and that's how judge by slang wound up with the range that he did we think that memory was the sentence unreasonable given the 3553 a factors but that procedurally the district court incorrectly applied the guidelines if you look at the overview of the transcripts of the resentencing I encourage judge by slang to make a argument as to the 3553 a factors the questions of restitution the other issues that we want to present it and judge by slang declined to do that well he did make a guideline determination to me even a guideline determination at the very conclusion of the sentencing he he made the guideline calculation as a pronouncement without additional argument he ruled that he wasn't going to revisit the issue of restitution which is why we think that the question of the scope of resentencing on remand was one that all of us could benefit from additional guidance on certainly there was as the record bears out an abundance of confusion at the time of the resentencing as to what wanted to be done and hearkening to your honor's comment about ball of wax that appeared to be judged by slimes approach not only at the second sentencing but at the first sentencing which is you guys tell me everything that you want me to to think about and I'll think about it the whole time and then I'll tell you what I think of fair sentences and judge by slang both at the original sentencing which came approximately one month after the Booker decision and at the sentencing on remand basically did the same thing made references to the totality of the circumstances and the all of the facts that were before the court and at one point he said I think that my job here is to give a fair sentence I don't understand why this was sent back but I think it was sent back by the Ninth Circuit because they thought I'd given her too much time and they didn't tell me how to fix that problem so I'm not going to give her I'm going to knock two years off and that was basically his position and if you look at even though he said I'm incorporating all of my previous findings by reference at the time of the remand if you analyze the or not even analyze if you know what new arguments did you make to him on remand that would prevent him from reincorporating his previous findings I wanted to visit restitution I wanted to visit this understand restitution let's set that to a side I understand that restitution maybe it's whole separate ball of wax but in terms of guideline calculation whether or not these offenses should be grouped or whether or not any particular upward adjustment or downward adjustment under the guidelines was appropriate what new arguments did you make to him which would make it illegitimate for him to reincorporate his previous findings I think that's part and parcel of the scope of the land issue I asked judge by slang on remand to make a determination that miss hunters her criminal history is over represented she was suffering from points of power criminal history for a $500 misdemeanor theft which occurred after all of the but you didn't make any new arguments on the second sentencing pertaining to that that you have already made on the first well I wasn't counsel at the first sentencing all right that hadn't already been made on the first right now as I stand here I believe that argument was made but not developed as much as I his own comments took a very narrow view of what it was he was to do and how it was that he was to do it what troubles us is that the inconsistencies between what he based his original sentence on under the guidelines in the application of the guidelines as opposed to on remand where instead of taking into consideration the acceptance of responsibility and plea of guilty to 21 of the 22 counts and giving this hunter a benefit for that he refused to do so instead of imposing a sentence which was too much below what he determined to be the reference advisory guideline range he gave a sentence that was one month below the top end of the advisory guideline range but he did decrease her sentence he decreased her sentence by two years told her that she'd be out in about a year he missed that by a year I'm not understanding how you're saying he did the same thing when he didn't do the same thing in fact decreased her sentence by two years he did he said that that's the way that he sought to fix the issue what I meant by the same thing I meant the same reasons for doing what he did didn't track because he found a different guideline range so he was focused on years time not I the advisory nature of the guidelines I'd like to reserve half a minute if I could you can thank you if I can lower these you may good morning I'm Karen Leffler I'm the US counsel on appellate counsel on this case if I can try to dress things in the order that they were just brought up and of course stop for all questions with regard to the issue I mean I think that it may have taken us a while but we solved the district courts double jeopardy issue because we agreed just will just apply the 2000 book but I want to point out and I'm going to give you two exact reference sites that that was exactly the defendant's position at the resentencing the reason the government put in in the supplemental excerpt of record the defendant's sentencing memorandum because at page 235 and 236 of the supplemental excerpt and I am quoting from the defendant's sentencing memorandum quote it is the defense position that the correct guideline to be applied in this case for purpose of the reference guidelines in consideration with other three five five three a factors would be the two thousand sentencing guideline provisions also on excerpt of record page 73 from the hearing defense counsel said it is the 2,000 guidelines that apply to everything and that's what we did so I think that's an issue that you know right or wrong or whatever that was what was asked for and I realized it took me a while to get there but ultimately in the sentencing I said judge just used the 2,000 guidelines that's what they want it's the most lenient one and that's what we did and that solves any double jeopardy ex post facto argument which was the with regard to another point that I sort of want what I want to make is that when we got to the resentencing hearing there was no new evidence introduced on anything it was our first new argument on the restitution point wasn't there there was not actually there was a slightly new argument and let me explain what happened was in the first hearing there were arguments about restitution there were some objections there were some things that we worked out in the first sentencing hearing for example the issue about salaries we had decided because I looked up the law and said we'll only do restitution where she actually worked as a licensed nurse and not for jobs she got through fraud that weren't okay on the sentencing memorandum defense counsel said I want to read I want to raise all my previous objections all the objections that were made before and I want to add that Middleton and Johnson are not victims of the and those are new because that had been conceded in the first argument that they were victims so that is a new argument but the judge did not he didn't address those yes he did where do you do that I have that what he did is and I will say if I give a little preamble it is true that we all jumped around a bit in the argument I mean the judge gave us two and a half hours he never cut anybody off he constantly said both to mr. Kellogg and myself I want to hear everything you have what he did with restitution is page 116 of the excerpt of record he didn't address it in great detail what he said is I'm going to outline the restitution my position here and this is on page 116 and then he made a ruling it may not have been in great detail but it was on 121 of the excerpt of record and he said I'm going to accept the restitution figures as initially imposed it is a conservative estimate from that time I've relistened to everything there was lots that we didn't include so but that doesn't address the new arguments pertaining to Middleton and Johnson at all does it it doesn't address it in terms of saying I disagree with you I think they're victims but that's it was a legal argument and he basically said no I think that they're victims all right assuming I'm sorry I'm sorry so the go back and looked again at the restitution from the first hearing and there was an argument about Middleton and judge the concession I misspoke a little bit the concession was that Martha Johnson was a victim in the first hearing there were argument about whether Middleton was a victim and there was an argument that he had overstated the restitution with regard to attorneys fees and judge by sign address that directly so we have a restitution issue properly before us your position as I take it is that the amount of loss is not properly before us it was affirmed by the Ninth Circuit in terms of the collateral issue yes and I have but I but I think that also substantively and if you would have to do that there were three reasons why it is also substantively correct that collateral this collateral issue doesn't nice what was correct if we affirmed it but no I just meant that the defense had argued that because the court said you didn't reduce any evidence maybe it wasn't law of the case and it was correct if you'd like me to address it I will otherwise I'll turn back to the restitution go to the restitution okay let me turn to the restitution issue the argument this time was just as a matter of law Johnson and Middleton are not victims and I certainly the government's position that they are on the mandatory victim witness restitution act which is what we're dealing with I don't think the the facts here in dispute who Johnson was is she's the one that Becky Hunter as a business plan right goes to Becky as Becky Barnett and says you know create all this and then doesn't pay her and then Middleton she works in the cellar right he's the seller now the reason that they are directly and proximately harmed in addition to be sort of strictly intertwined with the offense is that I mean well miss Hunter was trying to get the loan the purpose of the loan was to pay Middleton well the purpose of the loan was to buy Middleton's business right right but I mean and the offense was that there's false statements made in the loan application right that's correct what do we do about the trial testimony where the Department of Agriculture agent says that the application was denied based on lack of collateral and not based on any misstatement I think that here's what we do because that is true he said because the cross-examination of mr. Stewart at the time was that this was some FBI sting and the FBI had caused this and what he said is that she didn't have sufficient equity she didn't you know put up any money of her own that might have been fixable but certainly there was no way they were going to give her the loan you know he would he you know there was no way they're gonna give her the loan when he discovered that she wasn't in fact Becky Barnett and that all of the background was a fraud so the way the question was asked and he gave you know correct answer you know you can fix equity you can turn to somebody and say put more money into this you can't fix she certainly wasn't going to get it because of the fraud and because it was all fraudulent all of them you know all of them the money Middleton had put into it he was directly harmed because it was all fraudulent from the trial court might have done but there's no evidence that it did do it there's no evidence that made any such findings of fact is there in terms of imposing restitution well and maybe I'm missing a finding that the basis of the loan that the loan would have been denied because of the well and maybe I'm forcing your thoughts into mine I don't mean to do that but it seems to me like you're saying the trial court could have well rejected the testimony of the Department of Agriculture that they denied the loan based on the lack of collateral and determined that in fact they denied the loan based on the Department of Agriculture's knowledge that there was some sort of FBI suspicion going on here or might have used another basis to deny the loan when in fact the only testimony is that they denied the loan based on a lack of collateral no no I'm not I'm not in any way saying and I would think it would be ridiculous for the court to deny mr. Stewart's testimony I mean there was no I mean mr. Stewart was up I'm saying as a matter of law the court doesn't have to make that finding because as a matter of law based on the facts of the case and the cases that I cited in my brief they were still directly and proximately harmed by her actions only on the theory would not have they would not have approved the loan even if she had collateral you mean if she had put up equity yes yeah that if it is clear that given what she was doing the fact that she got denied for a financial reason that had nothing to do with her false statement had it gone forward beyond collateral which was fixable perhaps then she would have because of the the false documents so they would not have gotten there she wouldn't have got the what's-her-name wouldn't have gotten the fee for doing the business plan and Middleton wouldn't have gotten the company that's your theory does that does that work because I don't know with the chronology in other words was the are you saying that that is what would have happened because chronologically if they had gone forward by that time the fraud was discovered and it would have been rejected for that reason what happened is if I can do the chronology is that the FBI contacted mr. Stewart because this was after they had learned about miss hunter and notified the nursing board that she was not a nurse and therefore the sort of nursing she could no longer use the nursing licenses they had then she went contacted ms. Johnson and the USDA fraud was sort of the last count for a while and then then the FBI contact Stewart Stewart said well I already have a meeting with her and they said can we take the meeting and he said yes and then after miss hunter came to that meeting she never contact she never showed up again so they had no further discussions other than she sued him for sex discrimination but he never met her again or had further discussions with her in the trial the defense position in some part was that it was a FBI sting that somehow this and and I don't remember exactly you're running out of time one question shifting to the employers on the nurse you mentioned the nursing license my understanding is that she was required to give back all or all of her salaries she got because she only on those those entities in which the nursing license was required I mean she acted I understand so because she didn't have a license even though she actually did work is that correct Kate is there any requirement that she'd be given credit for the value of her work well that's just something I wanted to bring up because I looked at right here that I relied originally on the case law that had to do with the you know FDA and adulterated drugs actually in 2001 it's kind of an interesting analogy in the 2001 guidelines application note 2f I think it's sub 5 they the guidelines now actually make the exact distinction that I made in the law and they say and it has to do with loss they say that in a situation where you misrepresent the license and this is 2f1 it's a small i5 in the 2001 guidelines that you should add the full amount of the money paid without any reduction for services rendered to the loss figure it's not a restitution guideline it's obviously a loss one and they to me I read that as an app sort of an acknowledgement of the case distinction that I saw in 2004 between cases where you misrepresent you're a lawyer or a nurse and so I looked at that as I was getting ready and I and I know it's I know it's cap F and small all right well we'll find it all right and it makes it really acknowledges the exact case got it you're over going up it's counting up now thank you we submit that collateral is properly before the court at this time I think that the reason that the issue is affirmed in the first opinion of the court was because of a lack of evidence we on remand pointed out to specific portions of the pre-sentence report which verified our position that there was collateral which should be offset from the amount of loss part of judge by slides approach was that we didn't know to what extent he was willing to consider or hear evidence or argument or presentation well when the Ninth Circuit affirms the original judgment on it I don't think he would be incited if you were encouraged to reopen on something that was affirmed I wanted to do that I understand and certainly know who makes the rules and I follow your honor I think that the last comments about misrepresentation of a license for an FDA case when you're talking about product licenses that's much different than labor which was the basis for restitution did you make any proffer on what the value of her services were no how would you prove that she's not a nurse she's not licensed but she was there working for these different jobs that she had for an extended period of time well that wasn't the case in the Department of the Army correct well that's right and that came much later and that would be a different instance okay thank you both now the case argued is submitted
judges: Snow, Fisher, Berzon